UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

...................................................................................... X

ARROW PRODUCTIONS, LTD.,                          Index No. 13 Civ. 5488 (TPG)

        Plaintiff,

    -against-

THE WEINSTEIN COMPANY LLC, et al.,

        Defendants.

...................................................................................... X


**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
FOR JUDGMENT ON THE PLEADINGS, ATTORNEYS' FEES, AND COSTS**


PRYOR CASHMAN LLP
7 Times Square
New York, New York 10036
Telephone:  (212) 421-4100
*Attorneys for Defendants*


*Of Counsel:*
    Tom J. Ferber (tferber@pryorcashman.com)
    Benjamin S. Akley (bakley@pryorcashman.com)

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................ii

I.   ARROW MISREPRESENTS THE FACTS
     AND THE LAW WITH RESPECT TO FAIR USE.....................................................1

     A.  Fair Use Can Be Determined on This Motion as a Matter of Law ...........................1

     B.  Arrow Ignores the Transformative Nature of *Lovelace* .............................................2

     C.  The Other Three Fair Use Factors All Weigh in Defendants' Favor........................5

II.  ARROW MISSTATES TRADEMARK LAW TO AVOID DEFENDANTS'
     FIRST AMENDMENT AND NOMINATIVE FAIR USE DEFENSES.....................................6

     A.  Arrow's Arguments Regarding the First Amendment Defense Under *Rogers* All Fail ..........6

     B.  Nominative Fair Use Is a Statutory Doctrine Which
         Protects Exactly the Type of Trademark Use at Issue Here .........................................8

     C.  Defendants' Trademark Defenses Are Properly Decided in the Rule 12 Context.................10

## TABLE OF AUTHORITIES

**CASES**                                                                                          **PAGE(s)**

Bill Graham Archives v. Dorling Kindersley Ltd.,
    448 F.3d 605 (2d Cir. 2006)...................................................................................................1, 4, 5, 6

Blanch v. Koons,
    467 F.3d 244 (2d Cir. 2006).......................................................................................................2, 3

Brownmark Films, LLC v. Comedy Partners,
    682 F.3d 687 (7th Cir. 2012) ..........................................................................................................2

Campbell v. Acuff-Rose Music, Inc.,
    510 U.S. 569 (1994) ...............................................................................................................*passim*

Cariou v. Prince,
    714 F.3d 694 (2013).............................................................................................................1, 2, 4, 6

Clean Flicks v. Soderbergh,
    433 F. Supp. 2d 1236 (D. Colo. 2006).......................................................................................2, 3

Dastar Corp. v. Twentieth Century Fox Film Corp.,
    539 U.S. 23 (2003) ..........................................................................................................................9

Dessert Beauty, Inc. v. Fox,
    568 F. Supp. 2d 416 (S.D.N.Y. 2008), aff'd, 329 Fed. Appx. 333 (2d Cir. 2009) ........................10

Dillinger v. Electronic Arts, Inc.,
    No. 1:09-cv-1236 (JMS) (DKL), 2011 U.S. Dist. LEXIS 64006
    (S.D. Ind. June 16, 2011) ................................................................................................................7

Dombrowski v. Pfister,
    380 U.S. 479 (1965) ......................................................................................................................10

Eastland Music Group v. Lionsgate Entertainment, LLC,
    707 F.3d 869 (7th Cir.), cert. denied, 187 L. Ed. 2d 46 (U.S. 2013).......................................6, 7, 10

EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.,
    228 F.3d 56 (2d Cir. 2000)............................................................................................................10

E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.,
    547 F.3d 1095 (9th Cir. 2008) .......................................................................................................7

Farah v. Esquire Magazine,
    No. 12-7005, 2013 U.S. App. LEXIS 23719 (D.C. Cir. Nov. 26, 2013) .......................................10

## CASES                                                                  PAGE(s)

Hofheinz v. A & E TV Networks,
    146 F. Supp. 2d 442 (S.D.N.Y. 2001)..................................................................2, 3, 5

Jones v. Ground Zero Entm't,
    No. 05-CV-6461 (JSR), 2006 U.S. Dist. LEXIS 44364 (S.D.N.Y. June 27, 2006).....................7

Kelly-Brown v. Winfrey,
    717 F.3d 295 (2d Cir. 2013).............................................................................1

L-7 Designs, Inc. v. Old Navy, LLC,
    647 F.3d 419 (2d Cir. 2011)............................................................................1

Lemme v. NBC,
    472 F. Supp. 2d 433 (E.D.N.Y. 2007) ...............................................................8

Louis Vuitton Mallatier S.A. v. Warner Brothers Entertainment,
    868 F. Supp. 2d 172 (S.D.N.Y. 2012)...........................................................7, 8, 10

Mattel, Inc. v. Goldberger Doll Manufacturing,
    365 F.3d 133 (2d Cir. 2004).............................................................................5

Mattel, Inc. v. MCA Records, Inc.,
    296 F.3d 894 (9th Cir. 2002) ..........................................................................7

Metropolitan-Goldwyn-Mayer, Inc. v. Showcase Atlanta Cooperative Products, Inc.,
    479 F. Supp. 351 (N.D. Ga. 1979) ...................................................................3

New Era Publications International, ApS v. Carol Publishing Group,
    904 F.2d 152 (2d Cir. 1990)...........................................................................4

Nova Prods. v. Kisma Video, Inc.,
    No. 02-CV-3850 (HB), 2004 U.S. Dist. LEXIS 24171 (S.D.N.Y. Nov. 30, 2004) ......................5

Ringgold v. Black Entertainment Television, Inc.,
    126 F.3d 70 (2d Cir. 1997)............................................................................6

Rogers v. Grimaldi,
    875 F.2d 994 (2d Cir. 1989)..........................................................................6, 7

Salinger v. Random House,
    811 F.2d 90 (2d Cir. 1987)............................................................................4

SOFA Entertainment, Inc. v. Dodger Productions,
    709 F.3d 1273 (9th Cir. 2013).........................................................................2, 4

**CASES**                                                                    **PAGE(s)**

<u>Syler v. Woodruff</u>,
    610 F. Supp. 2d 256 (S.D.N.Y. 2009)...........................................................................................8

<u>SunTrust Bank v. Houghton Mifflin Co.</u>,
    268 F.3d 1257 (11th Cir. 2001) ...........................................................................................3

<u>Tiffany (NJ) Inc. v. eBay, Inc.</u>,
    600 F.3d 93 (2d Cir. 2010)...................................................................................................8

<u>TrafFix Devices, Inc. v. Marketing Displays, Inc.</u>,
    532 U.S. 23 (2001) ..............................................................................................................9

<u>Twin Peaks Products, Inc. v. Publications International, Ltd.</u>,
    996 F.2d 1366 (2d Cir. 1993) ..........................................................................................7, 8

<u>Wright v. Warner Books, Inc.</u>,
    953 F.2d 731 (2d Cir. 1991)................................................................................................1

<u>Washington Post Co. v. Keogh</u>,
    365 F.2d 965 (D.C. Cir. 1966)..........................................................................................10

**STATUTES**

Fed. R. Civ. P. 12 (b)(6).........................................................................................................2, 8, 10

15 U.S.C. §1125(c)(3)(A)...............................................................................................................8

15 U.S.C. § 1115(b)(4) ...................................................................................................................9

Arrow's opposition brief does not dispute that *Deep Throat*, and Linda Lovelace's role in it, are controversial, making them appropriate subjects of social commentary, such as that in *Lovelace*. Arrow conspicuously avoids the Second Circuit's 2013 decision in <u>Cariou v. Prince</u>, 714 F.3d 694 (2013), relying largely on cases which predate both <u>Cariou</u> and the U.S. Supreme Court's 1994 landmark decision in <u>Campbell v. Acuff-Rose Music, Inc.</u>, 510 U.S. 569 (1994), which established the test for "transformative" fair use. This transparent tactic reveals the weakness of Arrow's position. Arrow also does not dispute that "Linda Lovelace" is widely used in a non-trademark manner to refer to the actress in question, including in an interview on Arrow's own *Deep Throat*. Defendants' use of Arrow's purported trademarks in a non-trademark manner is, therefore, not actionable as a matter of law.

**I.     ARROW MISREPRESENTS THE FACTS
AND THE LAW WITH RESPECT TO FAIR USE**

**A.     <u>Fair Use Can Be Determined on This Motion as a Matter of Law</u>**

A fair use defense may be adjudicated on a Rule 12 motion where the pleadings, as well as incorporated or integral documents, clearly provide "the facts necessary to establish the defense…" <u>Kelly-Brown v. Winfrey</u>, 717 F.3d 295, 308 (2d Cir. 2013); <u>see also</u> <u>L-7 Designs, Inc. v. Old Navy, LLC</u>, 647 F.3d 419, 422 (2d Cir. 2011). Moreover, fair use is a "context-sensitive inquiry," <u>Cariou</u>, 714 F.3d at 705 (citing <u>Campbell</u>, 510 U.S. at 577-78 (1994)), which requires only that the court be able to make a determination as a matter of law. See <u>Wright v. Warner Books, Inc.</u>, 953 F.2d 731, 735 (2d Cir. 1991) ("[t]he mere fact that a determination of the fair use question requires an examination of the specific facts of each case does not necessarily mean that in each case involving fair use there are factual issues **to be tried**") (emphasis in original; citation & quotations omitted).

In <u>Cariou</u>, for example, the Second Circuit based its determination of fair use exclusively on its "observation of…the artworks themselves," and *rejected* the district court's consideration of deposition testimony. 714 F.3d at 706; <u>see also</u> <u>Bill Graham Archives v. Dorling Kindersley Ltd.</u>, 448 F.3d 605,

608-615 (2d Cir. 2006) (affirming dismissal on fair use as a matter of law after comparing parties' works); Hofheinz v. A & E TV Networks, 146 F. Supp. 2d 442, 446 (S.D.N.Y. 2001), aff'd w'out op., 2002 U.S. App. LEXIS 13314 (2d Cir. May 13, 2002) (same); Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 692 (7th Cir. 2012) (affirming Rule 12(b)(6) dismissal where "the district court required only the two videos to adjudicate this issue"); SOFA Entm't, Inc. v. Dodger Prods., 709 F.3d 1273, 1276 (9th Cir. 2013) (affirming application of fair use as a matter of law).

As in Cariou, here a viewing of the parties' works compels the conclusion that: (i) the reenactments in Lovelace are transformative because they "add[ ] something new, with a further purpose or different character, altering the first with new expression, meaning, or message," Cariou, 714 F.3d at 705-06; (ii) Lovelace does not "usurp[ ] the market of the original work," as Lovelace is a biographical film, while Deep Throat is pornography, so that they are targeted at different audiences, id. at 708; (iii) Deep Throat, is a 40-year-old, "publicly known, expressive work[]" which lends itself to the type of transformative use at issue here, Campbell, 510 U.S. at 586; and (iv) Lovelace's reenactments from Deep Throat are "reasonable in relation to the purpose of the copying." Cariou, 714 F.3d at 710.

## B.   Arrow Ignores the Transformative Nature of Lovelace

Arrow erroneously suggests that a film made for profit requires a degree of transformativeness that is not present in Lovelace. (Opp. Br. at 11). But transformativeness not only "lie[s] at the heart of the fair use doctrine's guarantee of breathing space," Cariou, 714 F.3d at 706 (quoting Campbell 510 U.S. at 579), it also minimizes the significance of a profit motive. See Campbell, 510 U.S. at 579. The reenacted scenes in Lovelace represent precisely the "new expression, meaning or message" that is protected by fair use.[1] Cariou, 714 F.3d at 705. Arrow's attempts to distinguish Campbell, Cariou, Blanch[2], and SOFA all

---

[1] Significantly, the original versions of two of the s Deep Throat cenes at issue featured extended and graphic depictions of sexual activity, whereas their reenacted counterparts in the non-pornographic Lovelace depict the shooting of the Deep Throat scenes (including the cameramen and other production staffers) without graphic content. Arrow argues that the omission of the sexual content constitutes a "minor change [that] does not amount to a transformative use," (Opp. Br. at 12), relying on Clean Flicks v.

fail, since, as in some or all of those cases, *Lovelace* represents a social commentary on its subject matter. See SunTrust Bank v. Houghton Mifflin Co., 268 F.3d 1257, 1271 (11th Cir. 2001) ("It is hard to imagine how [the defendant] could have specifically criticized [the original work] without depending heavily upon copyrighted elements of that book.").

Arrow also argues that it is irrelevant that the scenes in *Lovelace* are reenactments – rather than exact copies – of their counterparts in *Deep Throat*, citing Metro-Goldwyn-Mayer, Inc. v. Showcase Atlanta Cooperative Prods., Inc., 479 F. Supp. 351 (N.D. Ga. 1979) ("MGM") (Opp. Br. at 12-13). In MGM, the court found no fair use where the defendant's theatrical work reenacted the scenes, plot, and setting of *Gone With The Wind*. Id. 354-55. Even if MGM were a precedent in this Circuit, it would be outdated because it preceded Campbell's "transformative" test. Moreover, MGM is inapposite because the allegedly infringing work "'move[d] in sequence through the major episodes'" of the original work with an "identical ... function[]." (Opp. Br. at 13, quoting MGM at 361), while *Lovelace* does not track the plot of the entirely fictional (and patently absurd) *Deep Throat*. *Lovelace* is based on the life of its title character, which Arrow has conceded it does not own or control. (Opp. Br. at 1: "No one has suggested that Plaintiff owns Boreman's life or has the right to control the terms on which it is discussed").

Finally, Arrow incorrectly asserts that the biographical nature of *Lovelace* is irrelevant to the determination of whether *Lovelace* is transformative of *Deep Throat*. (Opp. Br. at 14-15).

First, it is beyond dispute that *Lovelace* is a biographical film. Arrow acknowledges that "most of the events dramatized in Defendants' movie were described in a **memoir** written by the late Linda [Lovelace]." (Opp. Br. at 1 n.1) (emphasis added).[3] Accordingly, the Hofheinz court's finding that

---

Soderbergh, 433 F. Supp. 2d 1236 (D. Colo. 2006). However, that case involved not reenactments in a biography, but the defendant's reselling exact copies of copyrighted films that had been edited only to remove sexual content. 433 F. Supp. 2d at 1240-42. Here, the graphic sexual content was not featured in the reenacted scenes because it was irrelevant to *Lovelace*'s transformative purpose. Thus, Clean Flicks is inapposite.
[2] Blanch v. Koons, 467 F.3d 244 (2d Cir. 2006).
[3] Arrow's acknowledgment on that point directly contradicts its later claim that *Lovelace* is a "feature film that fictionalizes events." (Opp. Br. at 14).

"biographies in general and critical biographies in particular fit 'comfortably within' the[ ]…uses that can be fair,'" is entirely applicable here. 146 F. Supp. 2d 442, 446 (S.D.N.Y. 2001) (quoting New Era Publications Int'l, ApS v. Carol Publ'g Group, 904 F.2d 152, 156 (2d Cir. 1990)).4

Second, Arrow's reliance on Salinger[5] to argue that there is no "biography rule" (Opp. Br. at 14), is misplaced, because Salinger was a 1987 decision, rendered years before Campbell and a quarter century before Cariou. 811 F.2d 90. Arrow is also ignoring the Second Circuit's 2006 decision in Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605 (2d Cir. 2006), which stated:

> [W]e recognize … that [defendant's book] is a biographical work …. While there are no categories of presumptively fair use, *see Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. at 584, <u>courts have frequently afforded fair use protection to the use of copyrighted material in biographies, recognizing such works as forms of historic scholarship, criticism, and comment that require incorporation of original source material for optimum treatment of their subjects.</u> *See* 17 U.S.C. § 107 (stating that fair use of a copyrighted work "for purposes such as criticism, comment . . . [or] scholarship . . . is not an infringement of copyright"); *Am. Geophysical Union v. Texaco, Inc.,* 60 F.3d 913, 932 (2d Cir. 1994) (Jacobs, J., dissenting) (noting that "[m]uch of our fair use case law has been generated by the use of quotation in biographies, a practice that fits comfortably within the[] statutory categories of uses illustrative of uses that can be fair") (internal quotation marks omitted) (alteration in original); *Salinger v. Random House, Inc.,* 811 F.2d 90, 96 (2d Cir. 1987) (holding that quotation of Salinger's letters in a biography could be considered criticism, scholarship, and research, which are among the illustrative statutory categories of fair use enumerated in 17 U.S.C. § 107). <u>No less a recognition of biographical value is warranted in this case simply because the subject made a mark in pop culture rather than some other area of human endeavor.</u>

Id. at 610 (emphasis added).[6] Further, as the Second Circuit noted in Salinger, quotation of copyrighted works in a biographical work is among the very purposes for which the fair use privilege exists, and a biographer "is entirely free to fashion a biography that reports the[ ] facts" of his or her subject. Salinger, 811 F.2d at 100. In this case, *Lovelace* "reports the facts" of Linda Lovelace's life, many of which involved the filming of *Deep Throat*.

---

[4] Arrow states, correctly, that "biographies, by their very nature, do not compete directly against the works from which they…borrow," but then asserts, without support, that *Lovelace* and *Deep Throat* "compete directly against each other" because they are both feature films. (Opp. Br. at 14). While it is debatable whether *Deep Throat* qualifies as a "feature film" in the traditional sense, it cannot be seriously disputed that the markets for *Deep Throat* and *Lovelace* are different.
[5] Salinger v. Random House, 811 F.2d 90 (2d Cir. 1987).
[6] Arrow also ignores SOFA Entm't, 709 F.3d at 1278, which also found that the biographical nature of the disputed work contributed to its "transformative ends."

Third, Arrow's strained attempt to distinguish Hofheinz is further indication that *Lovelace*'s function as a biography makes it transformative fair use, since, as noted by Arrow, in Hofheinz the copied material was a *verbatim retransmission* of the original (*i.e.*, the actual footage), as opposed to the *reenactments* in *Lovelace*.[7]  146 F. Supp. 2d at 448.  In Hofheinz the defendant's work was nonetheless considered transformative fair use because it was "enough to give a viewer an idea…" of the types of films with which Peter Graves was involved, id., just as *Lovelace* reenacts scenes from *Deep Throat* to convey the nature of that film and to tell the story of its central character's involvement in it.  In sum, it cannot reasonably be disputed that the reenacted scenes in *Lovelace* are transformative.

C.    **The Other Three Fair Use Factors All Weigh in Defendants' Favor**

The remaining fair use factors also weigh in Defendants' favor.

With respect to the nature of *Deep Throat*, it is creative only in the most liberal sense of the word, as it consists largely of graphic depictions of sexual acts.  Arrow cites Mattel, Inc.  v. Goldberger Doll Mfg., 365 F.3d 133 (2d Cir. 2004) and Nova Prods. v. Kisma Video, Inc., No. 02-CV-3850 (HB), 2004 U.S. Dist. LEXIS 24171 (S.D.N.Y. Nov. 30, 2004), asserting that "salacious content" is entitled to copyright protection, but Defendants are not arguing that *Deep Throat* is not copyrightable.  Defendants merely assert that the limited creativity inherent in *Deep Throat* moves the film further from "the core of copyright protection," making it more susceptible to a fair use defense.  Campbell, 510 U.S. at 586. Moreover, as the Second Circuit stated in Bill Graham Archives, "the court considers the protection of the reasonable expectations of one who engages in the kinds of creation/authorship that the copyright seeks to encourage."  448 F.3d at 612 (citation & quotations omitted).  Defendants respectfully submit that pornography, such as *Deep Throat*, hardly fits this description.  In any event, *Deep Throat* is the type of "publicly known, expressive work[]" which lends itself to the type of transformative use at issue here. 510 U.S. at 586.

---

[7] Arrow admits that "the original footage is not reproduced verbatim" in *Lovelace*.  (Opp. Brief at 5.)

Second, the amount and substantiality of the reenacted scenes in *Lovelace* are "reasonable in relation to the[ir] purpose…," Cariou, 714 F.3d at 710 (citation & quotations omitted), since they are central to the story of Linda Lovelace's involvement in *Deep Throat* and the film's commercial success, which provides the context for *Lovelace*'s social commentary.  Arrow cites four cases which predate Campbell to argue that "the qualitative degree of the copying" is critical and that a "use may be deemed unfair if it appropriates the most noteworthy or characteristic elements."  (Opp. Br. at 16-17).[8]  Under Cariou, Arrow's argument fails where, as here, the transformation of the material is sufficient.  714 F.3d at 710.  Arrow's analysis is incorrect and the third factor weighs in Defendants' favor.

Finally, the "potential market" factor also favors Defendants because the target audience and the nature of the content of *Deep Throat* and *Lovelace* differ so greatly.  See Cariou, 714 F.3d at 708-09.  Arrow again misstates the standard, citing outdated district court cases from other jurisdictions in search of support for its assertion that *Lovelace* overlaps the "function" of *Deep Throat*.  (Opp. Br. at 18-19).  It cannot plausibly be argued that *Lovelace* "usurps the market of the original work," since it is a mainstream, biographical social commentary, while *Deep Throat* is hard-core pornography.  Id. at 708.[9]

## II.   ARROW MISSTATES TRADEMARK LAW TO AVOID DEFENDANTS' FIRST AMENDMENT AND NOMINATIVE FAIR USE DEFENSES

### A.   Arrow's Arguments Regarding the First Amendment Defense Under *Rogers* All Fail

The use of "Linda Lovelace" and "Deep Throat" in connection with *Lovelace* is protected as a matter of law pursuant to Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989).  As in Rogers, the terms have clear artistic relevance to the subject of the film and there is no misleading reference regarding the source or the content of the film, much less one that is "explicitly misleading."  Id. at 999; see also Eastland

---

[8] Arrow also cites Ringgold v. Black Entm't Television, Inc., 126 F.3d 70 (2d Cir. 1997), which is irrelevant because the copying was not remotely transformative.  See Bill Graham Archives, 448 F.3d at 612 (distinguishing Ringgold – in which the plaintiff's "work was being used for the same decorative purpose as the original" – from the biographical work at issue).

[9] Notably, Arrow does not oppose that part of Defendants' moton seeking an award of fees and costs if Defendants are successful on their fair use defense against Arrow's copyright claims.

Music Group v. Lionsgate Entm't, LLC, 707 F.3d 869, 872 (7th Cir.), cert. denied, 187 L. Ed. 2d 46 (U.S.

2013); Mattel, Inc. v. MCA Records, Inc., 296 F.3d 894, 901 (9th Cir. 2002); Dillinger v. Electronic Arts,

Inc., No. 1:09-cv-1236 (JMS) (DKL), 2011 U.S. Dist. LEXIS 64006, at *22 (S.D. Ind. June 16, 2011)

("Plaintiff points to no explicit misrepresentation" that the work originated with the plaintiff) (citing

Rogers, 875 F.2d at 999 and E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc., 547 F.3d 1095, 1100-01

(9th Cir. 2008)).[10]

Arrow urges the Court to ignore Rogers, arguing that it applies only to "allegedly misleading

titles using a celebrity's name," asserting that Defendants use their title character's trade name rather than

"Boreman," her birth name.  (Opp. Br. at 22).[11]  However, there can be no real dispute that "Linda

Lovelace" is the "celebrity name" associated with the actress who is the subject of Lovelace.[12]

Arrow also argues that Rogers does not apply because Deep Throat is supposedly "billed as"

"Deep Throat Starring Linda Lovelace," making Lovelace's title confusingly similar.  (Opp. Br. at 22).

Not only is this strained argument patently ridiculous, but "Linda Lovelace" does even not appear on the

case or label of the Deep Throat DVD released by Arrow, both of which refer to "Gerard Damiano's

Deep Throat." (Ex. DD to Answer. Copies are annexed for the Court's reference.)

Finally, Arrow argues that even in applying Rogers the Court must weigh the Polaroid factors to

assess likelihood of confusion, citing Twin Peaks Prods., Inc. v. Publications Int'l, Ltd., 996 F.2d 1366

(2d Cir. 1993).  However, Arrow fails to note that the Second Circuit held that "the finding of likelihood

---

[10] Arrow attempts to distinguish cases cited in Defendants' moving brief on the basis that they "address parodies, which are entitled to special First Amendment protections," and concern "situations where there was no likelihood of confusing consumers." (Opp Br. at 24 n.16).  Like parody, social criticism and commentary are protected as fair use, and the First Amendment "breathing room" applies to all transformative uses.  Moreover, there is "no likelihood of consumer confusion" here because Defendants have not used "Linda Lovelace" or "Deep Throat" to designate Arrow as the source of Lovelace.
[11] Rogers is not as limited as Arrow claims, as evidenced by the application of the Rogers test in Louis Vuitton Mallatier S.A. v. Warner Bros. Entm't, 868 F. Supp. 2d 172 (S.D.N.Y. 2012), which concerned the use of a trademarked fashion design in a film.
[12] "Linda Boreman" is not a name that anyone would recognize and would not serve to identify the subject matter of Defendants' movie.  Arrow cites Jones v. Ground Zero Entm't, No. 05-CV-6461(JSR), 2006 U.S. Dist. LEXIS 44364 (S.D.N.Y. June 27, 2006), for the proposition that because "Linda Lovelace" is a trade name Defendants' use is not protected under the First Amendment.  However, in Jones the court granted the plaintiff a preliminary injunction because the use of the plaintiff's stage name on the covers of the DVD "suggest[ed] endorsement" of the DVD by the plaintiff.  Id. at *3.  Here, Arrow's name does not appear anywhere in relation to Lovelace, so the concern about Arrow's implied endorsement does not exist.

7

of confusion must be *particularly compelling to outweigh the First Amendment interest* recognized in

Rogers." Id. at 1379 (emphasis added); see also Syler v. Woodruff, 610 F. Supp. 256, 265 (S.D.N.Y.

2009); Lemme v. NBC, 472 F. Supp. 2d 433, 446 (E.D.N.Y. 2007).  In Louis Vuitton Mallatier S.A. v.

Warner Bros. Entm't Inc., 868 F. Supp. 2d 172, 181 (S.D.N.Y. 2012), the court dismissed the plaintiff's

complaint pursuant to 12(b)(6) without conducting a full Polaroid analysis, noting that "[t]he Second

Circuit in *Rogers* emphasized that when First Amendment values are involved, courts should narrowly

construe the Lanham Act and 'weigh the public interest in free expression against the public interest in

avoiding customer confusion,'" and because the First Amendment concerns are so powerful, "where an

expressive work is alleged to infringe a trademark, 'the likelihood of confusion must be particularly

compelling.'" Id. at 181-82 (citation & quotations omitted).  In light of this high threshold, the court

dismissed the plaintiff's claims of confusion as "implausible." Id. at 182.  The two films in this case

compel the same conclusion: application of the Polaroid factors is unnecessary because there is not even a

plausible – much less a "particularly compelling" – likelihood of confusion.

> **B.     Nominative Fair Use Is a Statutory Doctrine Which**
> **Protects Exactly the Type of Trademark Use at Issue Here**

Arrow argues that nominative fair use is a "Ninth Circuit doctrine." (Opp. Br. at 19-20 (citing

Tiffany (NJ) Inc. v. eBay, Inc., 600 F.3d 93, 102 (2d Cir. 2010)).  In so arguing, Arrow overlooks section

43(c)(3)(A) of the Lanham Act, which states that the following trademark use is not actionable:

> Any fair use, including a nominative or descriptive fair use, or facilitation of such fair use, of a
> famous mark by another person other than as a designation of source for the person's own goods
> or services, including use in connection with…(ii) identifying and parodying, criticizing, or
> commenting upon the famous mark owner or the goods or services of the famous mark owner.

15 U.S.C. §1125(c)(3)(A).  The use of "Linda Lovelace"[13] and "Deep Throat" in relation to *Lovelace* or

its advertising are limited to identifying the subject and context of the film, and the terms are used in

---

[13] It is worth noting that Arrow does not even present "Linda Lovelace" to the public as a trademark – the term goes unmarked on the DVD case and cover for *Deep Throat*.  (Copies are attached hereto.)

furtherance of *Lovelace*'s goal of commenting upon Linda Lovelace's life and critiquing the industry that came to define her.  It would be impossible to meaningfully convey the subject of Defendants' film to the public without the use of "Linda Lovelace," since the actress who is the film's subject was publicly known by that moniker.[14]  Similarly, it would be impossible to make a film about the actress Linda Lovelace without referring to *Deep Throat*.  <u>Arrow's own DVD proves this point: in an "Extra Feature" interview with actor Eric Edwards, she is referred to exclusively, and repeatedly, as "Linda Lovelace."</u>

Additionally, Defendants used the terms only as was reasonably necessary.  Improperly conflating its Lanham Act and copyright claims, Arrow argues that "theft of substantial portions of *copyrighted* material from Deep Throat was designed to and did, in fact, mislead consumers into believing that Arrow sponsored and/or licensed Lovelace."  (Opp. Br. at 20-21) (emphasis added).  Alleged infringements of copyright are irrelevant to the issue of consumer confusion under trademark law.  See <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23,  34 (2003) ("[I]n construing the Lanham Act, we have been 'careful to caution against misuse or over-extension' of trademark and related protections into areas traditionally occupied by patent or copyright") (quoting <u>TrafFix Devices, Inc. v. Marketing Displays, Inc.</u>, 532 U.S. 23, 29 (2001)).  In any case, Defendants' use of "Linda Lovelace" and "Deep Throat" is reasonably necessary to identify the subject of *Lovelace* and Defendants' have done nothing that would suggest that Arrow sponsored or endorsed the film.[15]

---

[14] The stage name was so pervasive that it was used in the obituaries announcing  the actress' death in 2002, as well as in connection with the myriad articles, books, and films which discussed *Deep Throat* or her life.  Arrow's cynical assertion that Defendants "could have used Boreman's real name to refer to her in the title," (Opp. Br. at 20) is patently ridiculous, as almost no one would associate it with the very famous subject of Defendants' film.  Arrow again cites to <u>Jones</u> to argue that the use of a "trade name does not transform Defendants' misappropriation into fair use," (Opp. Br. at 21), but that case again is inapposite because the use of the term "Lovelace" as the title of Defendants' film in no way suggests Arrow's endorsement of the film.  2006 U.S. Dist. LEXIS 44364, at *3.  Because "Linda Lovelace" is the only term which can reasonably identify the subject of Defendants' film to the public, the use of the title *Lovelace* falls squarely within the category of nominative fair use protected by the Lanham Act.

[15] Defendants' use of "Lovelace" and "Deep Throat" also constitutes classic fair use under Section 33(b)(4) of the Lanham Act, which allows the "use, otherwise than as a mark,... of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of [a] party."  15 U.S.C. § 1115(b)(4).  Here, Defendants use those terms: (1) "other than as [ ] mark[s]" because the terms do not "indicate[ ] the source or origin" of the film; (2) in a "descriptive sense" because the terms describe the "composition," rather than the "source," of the film; and (3) in good faith because Defendants did not intend "to

**C.    Defendants' Trademark Defenses Are Properly Decided in the Rule 12 Context**

Trademark claims are subject to dismissal as a matter of law where a defendant's First Amendment rights are implicated "because if a suit entails 'long and expensive litigation,' then the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails." Farah v. Esquire Magazine, No. 12-7005, 2013 U.S. App. LEXIS 23719, at *13 (D.C. Cir. Nov. 26, 2013) (quoting Washington Post Co. v. Keogh, 365 F.2d 965, 968 (D.C. Cir. 1966)); Dombrowski v. Pfister, 380 U.S. 479, 487 (1965) ("[t]he chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution [of a lawsuit], unaffected by the prospects of its success or failure.").

Notably, the court in Louis Vuitton rejected the plaintiff's argument that the Rogers test could not be assessed on a Rule 12 motion, holding that pre-discovery dismissal of trademark claims is appropriate "where simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work (and without relying on the likelihood of confusion factors to do so)." 868 F. Supp. 2d at 183.[16] See also Eastland Music, 707 F.3d at 872 (12(b)(6) dismissal of trademark claim regarding film title because plaintiff "could not plausibly [ ] allege" consumer confusion).

This case is ripe for decision on Arrow's trademark claims, and those claims should be dismissed as barred by Rogers and the doctrine of nominative fair use.

---

trade on the good will of the trademark holder by creating confusion as to source…" See Dessert Beauty, Inc. v. Fox, 568 F. Supp. 2d 416, 423-26 (S.D.N.Y. 2008), aff'd, 329 Fed. Appx. 333 (2d Cir. 2009) (quoting EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56, 64 (2d Cir. 2000)) (quotations omitted).

[16] To the extent that Arrow argues this case is not ripe for dismissal because the parties have not conducted discovery, it has failed to meet its burden "to show a need for discovery…," Eastland, 707 F.3d at 871, which is particularly important where, as here, there is no likelihood of confusion and Defendants' First Amendment rights are implicated. Louis Vuitton, 868 F. Supp. 2d at 184 ("In a case such as this one, no amount of discovery will tilt the scales in favor of the mark holder at the expense of the public's right to free expression.")

Dated:  December 11, 2013

PRYOR CASHMAN LLP


By: _____/s/_____
          Tom J. Ferber
          Benjamin S. Akley
7 Times Square
New York, New York  10036
(212) 421-4100

Attorneys for Defendants

# Appendix:

## From Exhibit DD to Answer:

## Cover and Label of
## *Deep Throat* DVD



## ARROW DVD

### Starring
### LINDA LOVELACE and HARRY REEMS

Poor Linda Lovelace, she isn't enjoying sex as much as she'd like. So, her room-mate throws an orgy for her, but even this doesn't get Linda off. Next, Linda's friend talks her into seeing a sex therapist, Doctor Young, played by Harry Reems. He examines her and discovers that her clitoris is in her throat, deep in her throat. Dr. Young teaches her the art of deep throat to stimulate her clitoris. This gets her bells ringing. Doctor Young enlists her talents as his outcall sex therapist and we follow her adventures until finally she finds her true love ... a really hung guy who can ring her bells and untangle her tingler.

  


   

18 U.S.C. & 2257 records custodian - R. Pistol, 631 Las Vegas Blvd. S., Las Vegas, NV 89101. This video is exempt from compliance with 18 U.S.C & 22.57 since it was produced prior to July 6, 1995.

The performers in this motion picture, and the characters that they portray therein, were all over 18 years of age at the time of the photography. The contents to pornographic for minors and appropriate care should be taken so that it is not viewed by anyone under 18 years of age. The records required by 18 U.S.C. & 2257 and associated regulations with respect to the motion picture are held with the custodian of records at the office of the manufacturer, above. Arrow Production hereby certifies that on records custodian that the above all materials were in full compliance with the requirements of 18 U.S.C. & 2257 and associated regulations. ©Copyright 1982, 2007 Arrow Productions. All rights reserved. All commercialism or duplication of this copyrighted material without prior licensing is forbidden by federal law. Violators will be prosecuted. Rated XXX.

### Visit our website: www.xxxdeepthroat.com

## COLLECTOR'S EDITION SERIES



GERARD DAMIANO'S **DEEP THROAT** ®

ARROW DVD



Re-Mastered
Deep Throat
72

ARROW DVD

### GERARD DAMIANO'S
# DEEP THROAT ®

## HOW FAR DOES A GIRL HAVE TO GO TO UNTANGLE HER TINGLE?

### EASTMANCOLOR (X) ADULTS ONLY

## COLLECTOR'S EDITION SERIES

